## MATSON *v.* GOICO.

### APPEAL from the District Court of San Juan, Section 1.

No. 769.—Decided June 26, 1912.

EVIDENCE—ADDITIONAL EVIDENCE AFTER TRIAL—CONTRACTS—INTENTION OF PARTIES.—Construing liberally the provisions of sections 25 and 28 of the Law of Evidence, the judge who, after the trial, sets a date for the introduction of additional evidence for the purpose of amplifying and explaining the evidence already introduced relative to the intention of the parties when making the agreement in litigation commits no error, but such additional evidence must treat only of the circumstances relating to the agreement, and if evidence beyond the limit authorized by law is introduced that part of the evidence which exceeds said limit should not be considered by the trial judge nor by this court on appeal.

SERVITUDE OF RIGHT OF WAY—RIGHT OF PERSONAL USE—CONSTRUCTION OF CONTRACT.—The clause of the contract whose construction is the fundamental question in this suit reads as follows: "(c) It is a condition of this contract that the purchaser is entitled to use the alley specified in the second paragraph, but neither he nor subsequent purchasers may construct sheds (*ranchones*) nor tenement houses but only private residences." After examining the evidence introduced in this case and especially the contents of the deed of sale executed by the defendant to the first purchaser of the lot in litigation, the court held that the clause above transcribed constitutes a servitude of right of way and not a right of personal use of the alley in question in favor of certain persons only.

RIGHTS ACQUIRED BY PURCHASER—TRANSMISSION OF RIGHTS—PERSONAL RIGHTS—LIMITATION OF CONVEYANCE.—Rights conveyed by the vendor to the purchaser of a property may be conveyed in turn by the latter to another person and by the last to another, and so on in succession, unless it is a case of rights of an exclusively personal nature or a limitation is clearly expressed in the deed as the real and positive intention of the contracting parties.

ID.—MEANING OF WORD "PURCHASER"—TRANSMISSION OF RIGHTS—PERSONAL RIGHTS—LIMITATION OF CONVEYANCE.—In accordance with the doctrine laid down in the preceding paragraph the court held that the word "purchaser" used in clause *c* of the contract, which is the subject of this suit, also includes subsequent purchasers, because the right established in said clause is not of an exclusively personal nature, nor was a limitation clearly specified in the deed as the real and positive intention of the contracting parties.

ID.—CONSTRUCTION OF CONTRACTS—INTENTION OF PARTIES—CREATION OF SERVI-
    TUDES.—The doctrine laid down by the Supreme Court of Spain on November 4,
    1897, to the effect that ''in contracts creating servitudes or establishing
    encumbrances affecting the liberty of property, the intention of the parties·
    upon these points 'must be clearly expressed, a broad construction thereof
    not being permissible,'' is accepted by this court; but applying it to this
    case is does not produce the effect of obliging this court to hold that in the
    clause in litigation a servitude of right of way was not created instead · of
    only a right of use of a personal character.

The facts are stated in the opinion.

*Messrs.·Muñoz* and *Brown* for appellant.

*Messrs. Francis H. Dexter* and *Cayetano Coll y Cuchí*
for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The fundamental issue involved in this case consists in the
construction to be given to a certain clause of a contract of
purchase and sale. If said clause be construed to mean that
the defendant constituted a right of way in favor of the
house-lot which now belongs to the plaintiff, the plaintiff's
claim is just and in accordance with law. But if it be con-
strued to mean that the defendant did thereby recognize only
a right of use exclusively in favor of the person to whom she
sold the property, the complaint in that case should be dis-
missed.

The defendant, Clemencia Goico,· owner of a piece of land
situated at the place known as ''Condado,'' northern section
of *barrio* Santurce, of the city of San Juan, divided the same
into five lots, for which purpose she caused the plan joined to
the transcript to be drawn. On January 6, 1909, she sold to
Pablo Sierra Alvarez, by public deed, lot No. 4 under the
following description appearing in the second paragraph of
said deed:

''Lot No. 4 of the plan which Clemencia Goico caused to be
drawn of her lands by Civil Engineers Rodríguez and Solomon,
consisting of 572.54 square meters, with 22.60 meters fronting the
Loiza road; to the left, looking from said road, 31.55 meters, and
bounded on that side by lots Nos. 1, 2, and 3 of the vendor; in the
rear 20.18 meters adjoining lot No. 5 which the vendor purchased

of Hernand and Sosthenes Behn, according to deed of September 2, 1908, executed before Notary Julio César González, and to the right, as you enter, 22.95 meters adjoining the lot belonging to Bernardo Hidalgo.

"Of said 572.54 square meters Clemencia Goico reserves to herself 101.54 meters of an alley 3 meters wide opening on the Loiza road, which at the rear adjoins lot No. 5 and is bounded on that side by lots 1, 2 and 3 of the principal property belonging to the vendor, there remaining, therefore, 471 square meters, constituting the property sold."

Respecting the aforesaid deed, the following clause was also made a matter of record:

"(c) It is a condition of this contract that the vendee has a right to use the alley mentioned in paragraph 2, and neither he nor subsequent vendees may build barracks or tenement houses thereon, but only private residences."

The aforesaid deed was recorded in the registry of property "with the curable defect of not describing therein the alienated parcel, after deducting the 3 meters of alley reserved by the defendant." In the registry a general description of lot No. 4 was given, the circumstances being noted that its surface had been reduced by the segregation of the 101.54 square meters of alley, and, furthermore, "that the contract had been entered into with the condition that the vendee had a right to use the aforesaid alley, and that neither he nor subsequent vendees could build barracks or tenement houses thereon, but only private residences."

Sierra having become owner of the lot, he built thereon a house, which he sold together with the lot to José Benito Sobrino. The deed of sale does not appear in the transcript, but from the certificate issued by the registrar of property it appears that it was duly recorded in the registry.

On May 15, 1909, Sobrino sold the property to Antonio Laloma by public deed, which was also duly recorded in the registry, and, finally, Laloma, on July 5, 1910, sold it to the

plaintiff, Matson, likewise by public deed which was duly recorded in the registry of property.

In the deeds of Sobrino to Laloma and of Laloma to Matson no mention is made of the clause quoted by us in referring to Clemencia Goico's deed to Sierra, designated under letter (c), but in the former, namely, that of Sobrino to Laloma, when describing the property this statement is made: "Out of the contents of this lot a portion of 101.54 square meters is reserved by Clemencia Goico upon which no construction can be made, and on said portion an alley or road 3 meters wide," etc.; and then, among the stipulations, the following appears: "Save the reservation about construction on the alley or road, mentioned in the description of the property, the latter is sold as being free from encumbrances," etc. And in the latter deed, namely, that of Laloma to Matson, the fact of the reservation of the one hundred and odd meters and of the existence of the alley or road is also mentioned, and in describing the property it is said: "On the left by an alley or road reserved by Clemencia Goico."

From the time Sierra built his house he rented it to the plaintiff, Matson, and since then Matson has been using the alley for the service of his house until the defendant placed a fence almost in the middle of it, which prevented the plaintiff from entering by a gate in his fence opening on the alley at the rear of the lot.

Regarding the facts to which we have referred there exists no controversy. The controversy existing bears upon the construction and scope to be given to the clause designated under letter (c) in the defendant's deed to Sierra and made a matter of record in the registry of property.

After the hearing the trial judge informed the attorneys of his desire that the evidence be made ampler and clearer as to the intention of the parties when drawing the contract with respect to the use of the alley, and that to this end he had appointed a day for taking said additional evidence. The plaintiff objected to this, and later he objected likewise

when the witnesses for the defendant testified, the ground for his objection being that *oral* evidence on the intention of the parties to a *written* contract and on the meaning of such contract was inadmissible and impertinent. The court overruled the objections of the plaintiff, who forthwith entered an exception in each case.

A liberal construction of the provisions contained in sections 25 and 28 of the Law of Evidence (Laws of 1905, pp. 73 and 74) upholds the proceeding adopted by the district court.

Now, then, said evidence should have referred only to the circumstances under which the agreement was made or to which it related, since, in construing the document the district judge could not, nor can we, "insert what has been omitted, or omit what has been inserted," as provided by section 26 of said Law of Evidence. If any portion of the evidence taken went beyond the limit permitted by law, said portion should not have been considered by the district judge when rendering judgment in this case, nor should it be taken into account by us upon deciding the appeal.

At the first appearance before the judge the plaintiff, Matson, and the witness, Sierra, one of the former owners of the house, testified on behalf of the plaintiff, while the witness, Castro, and the plaintiff's witness, Sierra, testified on behalf of the defendant. Matson testified upon the existence of the alley, upon the use of the same, and upon the present construction, while Sierra testified upon the construction of the house, its lease to Matson, the existence of "an alley adjoining the lot," the fences built on each side of the alley, and the fact that he had intended to buy the entire lot, but the defendant had informed him "that she did not want to sell that part of it because she was going to open an alley there." Castro testified "that the alley 3 meters wide marked there (referring to the sketch) by two fences lies to the west of lot No. 4, and that lots 1, 2, and 3 adjoin the alley." Sierra corroborated his testimony to the effect that the defendant had told him that she could not sell him the

entire lot, because she desired to reserve a piece for the alley;" that the only thing she could do was to allow him a passage through the alley."

All this evidence was taken without any objection thereto. At the second appearance the defendant herself, Clemencia Goico, and witness, Sierra, testified on behalf of the defendant. The former stated that the words "subsequent vendees" had not been included in the first portion of clause (c) of the deed because the use of the alley by Sierra was a personal matter. Sierra, on his part, testified that the defendant had told him that she could not sell him the entire lot, "but that she could allow me a passage there." That he had not sold the alley to Sobrino because it did not belong to him, but to another person.

At the second appearance the plaintiff also produced evidence consisting of his own testimony and that of Eugenio Benitez Castaño and of Juan Morera Martínez. The plaintiff stated that he had always used the alley; that his vendor, Laloma, had said to him "that he believed the witness had a right to use the alley," and that when the defendant had prevented him from using it he had gone to see Sierra, who said to him, referring to Mrs. Goico: "She is a stubborn person." Benitez Castaño, the notary who had authorized the deed of the defendant to Sierra, testified "that he could not say whether the intention of the parties was to establish a right of way through the alley belonging to the alienated lot, or a personal easement"; that the minutes had been taken by Morera Martínez; and, finally, the latter testified that he had in fact prepared the minutes, and that in drawing the deed "the instructions of the parties, as also the intention of the notary, had been to allow the use of the alley, but not to establish a right of way through it."

The foregoing is a summary of the facts adduced and evidence taken in this case. Discarding that portion of the evidence which goes beyond what is permitted by law, and considering the agreement from the circumstances under

which it was made or to which it relates, and, above all, from the statements contained in the deed of sale by Mrs. Goico to Sierra, we are of the opinion that the judgment appealed from should be reversed.

Perhaps it did not occur to the defendant that her desire to convert into an alley part of the lot she had sold would bind her for all time. But the fact is that the existence of the alley was made a matter of record in the deed of sale and from the first moment it became a practical reality; that the alley was marked out by building fences on both sides of it; that it was used by the neighbors; that the lot sold and the house built thereon have passed into the possession of other persons; and that both in the deeds and in the registry the lot is described as "adjoining on the left an alley or road reserved by Clemencia Goico."

Matson rented the house built by Sierra and lived in it as long as Sierra owned it and afterwards, while it was owned by Laloma, and during all that time he used the alley as something to which he had a perfect right; and it is natural that in deciding finally to purchase it from Laloma the existence of the alley should be accounted a favorable circumstance. It could not be concluded that the alley was absolutely necessary to Matson's property, but it cannot be denied that it offers an advantage to it and enhances its value by affording an outlet along the whole of his lot on the left side, and by insuring on said side a strip 3 meters wide on which, being intended for a road, no constructions could be raised and no obstruction, therefore, put on air and light.

The trial judge based his decision against the plaintiff especially on the doctrine laid down by the Supreme Court of Spain to the effect that "in contracts where servitudes are constituted, or encumbrances established which affect the liberty of estates, the will of the parties upon these points should be clearly stated, a broad construction thereof not being permissible." (Judgment of Nov. 4, 1897.)

We are perfectly in accord with said doctrine, but do not

agree that upon its application to the case at bar it would produce the effect of a decision thereof favorable to the defendant.

The pertinent clause of the deed executed by the defendant, and which we have hereinbefore quoted, specifies that it is a condition of the contract that the *vendee* shall have a right to use the alley, but that neither he nor subsequent vendees may build thereon barracks or tenement houses, but only family residences.

It is alleged that the signification of the word "vendee" cannot be *extended* to subsequent vendees, but should be limited to the first, because when the vendor desired to refer to subsequent vendees she did so expressly, as revealed by the mere perusal of the second part of the stipulation.

Rights that are conveyed by the vendor to the vendee of an estate may in turn be conveyed by the vendee to another person, and by the latter to another, and so on in succession, unless the question be one of rights of an exclusively personal character or a limitation appears clearly expressed in the deed as the real and positive will of the contracting parties. The second part of the stipulation does not admit of the construction given it by the defendant. On the contrary, it clearly confirms the signification of the word "vendee" used in the first part as including all the vendees, since, as a result of the existence of the alley and the possibility that the alienated lot, from the fact of its adjoining throughout its whole rear a narrow street or alley, might be utilized for the construction of tenement houses, and the vendor, not wishing such thing to happen because it would undoubtedly be detrimental to her other lots, she imposed upon the vendee the obligation of not building thereon a house of this kind, but a family home. In the first part the vendor confers a right and in the second she imposes an obligation in connection with the right conferred.

It may be said that the right of way should have been more clearly established, and that instead of persons lots

should have been mentioned; but the fact is that, having in mind all the circumstances of the case and the very acts of the defendant, the wording as it stands is sufficient to enable us to conclude, without giving a broad construction to the contract, that a positive right of way was constituted in favor of the alienated lot.

For the foregoing reasons the judgment appealed from should be reversed and another rendered instead by this Supreme Court granting the prayer of the complaint.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, Wolf and Aldrey concurred.